UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN DIGNAN, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1307 (JCH) |
| | : | |
| | : | |
| ELLEN MCGEE, et al., | : | |
| Defendants. | : | AUGUST 18, 2008 |

**RULING RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 19]**

## I.      INTRODUCTION

The plaintiff, Brian Dignan, brings this action against defendant Ellen McGee,

both in her capacity as an individual and in her capacity as personal representative of

Daniel Flanagan's Estate, for personal injuries Dignan sustained as a minor as a result

of alleged sexual abuse by Daniel Flanagan.  Dignan makes the same claims against

Newridge Realty Corp., 1498 Third Reality Corp., and 696 Third Restaurant Corp

(collectively, "defendant corporations").  All defendants have moved to dismiss the

claims made against them, asserting lack of personal jurisdiction under Fed. R. Civ. P.

12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

For the following reasons, the court GRANTS the Motion to Dismiss with respect

to defendant corporations and Ellen McGee in her individual capacity, but DENIES the

Motion to Dismiss with respect to McGee in her capacity as personal representative of

the Estate of Daniel Flanagan.

## II.     BACKGROUND

At the time of the filing of his Complaint, Dignan was a forty-seven year old

residing in Connecticut.  Dignan's father was a business partner of Flanagan at the

Blarney Stone Restaurant in New York City.  Flanagan was the owner and founder of

that restaurant. In 1970, at the age of thirty-nine, Dignan's father died due to a rare neurological disease that ultimately caused cardiac failure.[1] Dignan was ten years old at the time of his father's death. After his father's death, Dignan claims that the sexual abuse started. Flanagan told Dignan that he promised his father that he would take care of him. Dignan claims that, because he was Flanagan's godson, he was singled out and targeted for the worst of the sexual abuse. Compl. ¶ 5. Dignan alleges that he came to think of Flanagan as a father figure and relied on him for housing and daily sustenance.

The first physical contact of sexual nature took place at a country club in Greenwich, Connecticut when Dignan was fifteen years old. Dignan alleges that the sexual abuse, exploitation, and assault continued in various different circumstances for many years into the age of majority. For instance, Dignan alleges that Flanagan told him about a fictitious doctor in order to induce him to do certain things. Flanagan allegedly told Dignan and his brothers[2] that Dr. Golick was a world renowned neurosurgeon. Although Dignan never met this doctor, he believed Flanagan when Flanagan told him that Dr. Golick had implanted a tube in Flanagan's anus for the purpose of distributing hormones to Dignan during anal sex. Similarly, Flanagan convinced Dignan to take alcohol and drugs such as Tranxene and Fioranol by saying it was at the direction of Dr. Golick. Dignan asserts that the effects of cumulative years of

---

[1]In his Complaint, Dignan alleges that Flanagan caused the death of his father by poisoning him in order to gain access to Dignan and his brothers. Compl. ¶ 2 -4. While he alleges this in his Complaint, he does not appear to seek relief based on the allegation.

[2]Dignan attached two affidavits from his brothers, John and Kevin, to his Complaint. These Affidavits allege similar allegations of sexual abuse and deceit between Flanagan and John and Kevin Dignan. However, John and Kevin Dignan are not named parties in this case.

repeated sexual and psychological abuse at the hands of Flanagan has caused him emotional and psychological pain as well as physical suffering. Dignan also alleges that he suffers from self mutilation of and atrophy of his testicles as a direct result of the abuse.

With respect to the named defendants, Dignan alleges that Ellen McGee, Flangan's daughter, is also Dignan's godmother. He claims that, as a result of this "special" relationship with him, she had a heightened duty to report her suspicions of sexual abuse. He further alleges that she is a teacher and thus had a duty to report sexual abuse under Connecticut law. Dignan alleges that McGee was "acting in concert with Flanagan" and that she either knew or should have known from all the facts and circumstances about the sexual abuse. He further alleges that "she fraudulently concealed and even knowingly profited from the sexual abuse." Compl. ¶ 23. He claims that he wrote to her over seven times seeking answers regarding what she knew about the abuse but she never responded. Dignan alleges that her failure to respond is evidence of her knowledge of the abuse.

Dignan also alleges that, after Flanagan died in 1991, McGee knowingly destroyed a check made payable to him in the amount of one million dollars. He alleges that she concealed the existence of the check, even going so far as to conceal it from a Probate Court in New York and informing Dignan that the New York Supreme Court found in her favor. Finally, he claims that in an effort to cover up her fraudulent concealment of the check, McGee submitted a false police report to the Meriden Police Report stating that Dignan came to her house because a loan shark was after him for six hundred thousand dollars.

With respect to the defendant corporations, all of which are incorporated in New York, Dignan claims that Flanagan used his position as business partner of Dignan's father and as president of the defendant corporations to induce Dignan to trust him for the purposes of sexually abusing him. He further claims that the defendant corporations committed tortuous acts related to the sexual abuse. Flanagan also advised and instructed Dignan to leave his job as a lawyer to enter into business with Flanagan and the defendant corporations. It was at this point that Flanagan offered Dignan the check for one million dollars and told him that they could enter into business together and Dignan could start his own restaurant if he left his job as a lawyer. This, according to Dignan, was a way for Flanagan to assure that Dignan continued to be completely dependent on him both financially and emotionally. He also asserts that this action made him dependent on both McGee and the defendant corporations.

Based on the above mentioned conduct on the part of Flanagan, McGee and the defendant corporations, Dignan brings a cause of action that encompasses ten separate counts. Each count applies to all of the defendants and, aside from the claims of sexual assault and battery, include claims of intentional infliction of emotional distress, negligent infliction of emotional distress, corporate sexual assault, tortious interference, conversion, fraudulent concealment, intentional misrepresentation, negligent misrepresentation, and failure to report abuse.

III.   DISCUSSION

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d

Cir. 1998); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds,</u>

<u>Davis v. Scherer</u>, 468 U.S. 183 (1984).  The court must draw all reasonable inferences

in the plaintiff's favor.  <u>See, e.g.</u>, <u>Yung v. Lee</u>, 432 F.3d 132, 146 (2d Cir. 2005)

(discussing Rule 12(b)(6) motion to dismiss); <u>Lunney v. United States</u>,  319 F.3d 550,

554 (2d Cir. 2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to

dismiss).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests

only the adequacy of the complaint.  A Rule 12(b)(6) motion to dismiss cannot be

granted simply because recovery appears remote or unlikely on the face of a complaint.

<u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996).  In deciding a motion to dismiss, "[t]he

issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled

to offer evidence to support the claims." <u>Id.</u> (internal quotations omitted).  However,

"[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp. v.</u>

<u>Twombly</u>, 127 S.Ct. 1955, 1964-5 (2007).

Dignan has filed his appearance, *pro se*; thus, the court further notes:

> Since most *pro se* plaintiffs lack familiarity with the formalities of pleading
> requirements, we must construe *pro se* complaints liberally, applying a
> more flexible standard to evaluate their sufficiency than we would when
> reviewing a complaint submitted by counsel . . . .  In order to justify
> dismissal of the plaintiff['s] *pro se* complaint, it must be beyond doubt that
> the plaintiff can prove no set of facts in support of his claim which would
> entitle him to relief.

Lerman v. Bd. of Elections, 232 F.3d 135, 139-140 (2d Cir. 2000) (citations, footnote, and internal quotation marks omitted); see also Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008)( recognizing that courts should liberally construe *pro se* submissions).  In evaluating the plaintiff's complaint, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor."  Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000) (citations omitted).  The court must construe "*pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  Id. at 597.  However, "bald assertions and conclusions of law will not suffice to state a claim . . . ."  Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz v. Solema N.A., 534 U.S. 506 (2002) (internal citations omitted).

A.     Motion to Dismiss for Lack of Personal Jurisdiction

Defendants move to dismiss the claims against them based on lack of personal jurisdiction.  When responding to a Rule 12(b)(2) motion, a plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001)(citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodrigues, 171 F.3d 779, 784 (2d Cir. 1999)).  When the court relies on the pleadings and affidavits, the plaintiff must "make a prima facie showing that the court possesses personal jurisdiction over the defendant."  Id.  All pleadings, affidavits, and allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  Whitaker v. American Telecasting, Inc., 261 F.3d 196 (2d Cir. 2001).

In a diversity action case involving a defendant residing outside the forum state,

as is the case here, personal jurisdiction over a defendant is determined by the law of

the forum in which the district court sits, i.e., Connecticut.  Cutco Industries v.

Naughton, 806 F.2d 361, 365 (2d Cir. 1986); PDK Labs, Inc. V. Friedlander, 103 F.3d

1105, 1108 (2d Cir. 1997).  Connecticut law requires a two-step analysis.  "First, the

court must determine if the state's long-arm statute reaches defendant. Second, if the

statute does reach the [defendant], then the court must decide whether that exercise of

jurisdiction offends due process." Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d

79, 81 (2d Cir.1995).

### 1.    *Defendant Corporations*

Dignan claims this court has jurisdiction over the defendant corporations

pursuant to Conn. Gen. Stat. § 33-929 (f), which is Connecticut's long arm statute

governing jurisdiction over foreign corporations. The statute provides, in relevant part:

> (f) Every foreign corporation shall be subject to suit in this state by a resident of
> this state or by a person having a usual place of business in this state, whether
> or not such foreign corporation is transacting or has transacted business in this
> state and whether or not it is engaged exclusively in interstate or foreign
> commerce, on any cause of action arising as follows: (1) Out of any contract
> made in this state or to be performed in this state . . . .or (4) out of tortious
> conduct in this state, whether arising out of repeated activity or single acts, and
> whether arising out of misfeasance or nonfeasance.

Specifically he alleges that the defendant corporations committed tortious conduct in

Connecticut.  He states that, "he was abused by a corporate officer in Connecticut and

received promises of college education and business opportunity from the president of

said corporations as part of the sexual abuse, that he would be set up in a fine

restaurant if he did as he was told and that he would be taken care of."  Compl. ¶ 8, 21.

He also claims that the sexual abuse occurred at the defendant corporations'

headquarters in New York.  Compl. ¶ 21.  Dignan alleges that defendant corporations

are liable for the tortious acts committed by Flanagan because he was acting within the

scope of his employment as an officer and director of the defendant corporations.

It is true, that under the theory of respondeat superior, "a master is liable for the

wilful torts of his servant committed within the scope of the servant's employment and in

furtherance of his master's business."  Larsen Chelsey Realty Co. v. Larsen, 232 Conn.

480, 500 (1995).  However, in order to hold a corporation liable for the intentional torts

of one of its employers, "the employee must be acting within the scope of his

employment and in furtherance of the employer's business."  Id. at 501.  Thus, if the

sexual assault was not in furtherance of the business of defendant corporations, they

cannot be held liable for Flanagan's tortious acts.  "Cases of sexual abuse often

represent such a strong deviation from furthering an employer's business."  Doe v.

Norwich Roman Catholic Diocesan Corp., 268 F. Supp. 2d 139, 142 (D. Conn. 2003).[3]

The court cannot construe Dignan's conclusory allegations to support a claim of

respondeat superior. The facts alleged in Dignan's Complaint, even if proven, are

insufficient to constitute actions within the scope of Flanagan's employment or in

furtherance of the defendant corporations' business.  Nothing in the Complaint indicates

that Flanagan sexually abused Dignan in the course of his employment.  It is not

enough to say that the "sexual abuse occurred in the context of plaintiff learning the

business because teaching plaintiff the ropes in the restaurant/real estate business was

---

[3]The court in Doe noted that "usually, 'it is a question of fact as to whether a wilful tort of the servant has occurred within the scope of the servant's employment and was done to further his master's business." 268 F. Supp. 2d at 142) (citing A-G Foods Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208(1990).  However, some Connecticut courts have dismissed claims of sexual abuse on the pleadings because, as a matter of law, those acts did not further the business.  Id.

used to induce trust in Flanagan, and that trust was then abused." Pls Mem. in Opp. to Mot. to Dismiss at 18. The mere fact that Flanagan worked there and taught Dignan the ropes is not enough to prove that the alleged sexual abuse was in furtherance of his employment as owner and president of defendant corporations. Thus, the theory of respondeat superior fails as a matter of law.

Dignan also claims that defendant corporations are subject to personal jurisdiction in Connecticut because they solicited business in Connecticut through means of advertising their restaurants via newspaper and radio "in years past." All of the restaurants he speaks of are in New York but, because the advertising reached Connecticut residents, the corporations could reasonably foresee being haled into a Connecticut court. He suggests that the businesses received many customers from Connecticut yet he does not allege that they purposefully solicited business in Connecticut. Advertising in New York media outlets that reach Connecticut is not enough to satisfy personal jurisdiction. Lombard Bros., Inc. v. General Asset Management Co., 190 Conn. 245, 257 (1983)

Furthermore, in order to establish jurisdiction pursuant to § 33-929(e) over a foreign corporation, the transaction of business must be in the state, and a cause of action must arise out of the transaction of such business. Conn. Gen. Stat. § 33-929 (e). Dignan has not alleged that the torts committed by Flanagan arose out of the business the defendant corporations engaged in. Additionally, there is no "articulable nexus" between the sexual abuse claims and the defendant corporations' alleged business in Connecticut. Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)(stating "a suit will be deemed to have arisen out of a party's activities in [the forum state] if there

is an 'articulable nexus' or a 'substantial relationship' between the claim asserted and the actions that occurred in [the forum state].") (internal citations omitted). Thus, the court finds that defendant corporations are not subject to personal jurisdiction in Connecticut. The Motion to Dismiss with respect to the defendant corporations is therefore GRANTED.

      *2.     Ellen McGee*

McGee, in her individual capacity, asserts that she is not subject to personal jurisdiction because she resides in New York and does not work or own property in Connecticut. Dignan alleges that McGee is subject to personal jurisdiction for two reasons. First, that she committed tortious acts within Connecticut. These torts include fraudulent concealment (of both the sexual assault and check made out to Dignan by Flanagan) and by failing to report the sexual abuse. Secondly, Dignan claims that McGee is estopped from asserting personal jurisdiction because she made false and misleading statements to the court.

Connecticut General Statutes § 52-59b(a) governs the exercise of jurisdiction over nonresidents of the state. Under that statute, personal jurisdiction over a nonresident individual exists if the individual or his agent:

> (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer . . . or a computer network . . . located

within the state.

Again, Dignan alleges that McGee committed tortious acts in Connecticut by not reporting the abuse. He claims that McGee is a teacher and is thus required to report any sexual abuse pursuant to Conn. Gen. Stat. § 17(a)-101. He also claims that McGee made misrepresentations to the court in her Motion to Dismiss by saying that she is a professor and has never served as a teacher in the state of Connecticut. McGee Aff. at ¶ 9. Dignan alleges that this is false because McGee is a member of a program called "Speakers in Schools" through which program she, and others, occasionally give lectures in Connecticut high schools.

This, however, does not make McGee a "school teacher" under Conn. Gen. Stat. § 17(a)-101. Such a reading would mean that any person invited to speak at a school would be subject to mandatory reporting. Though school teacher is not defined under Conn. Gen. Stat. § 17(a)-101, McGee cites Conn. Gen. Stat. §53a-65 which defines a "school employee" as an individual "employed by a local or regional board of education or a private elementary or secondary school or working in a public or private elementary or secondary school." As a professor in New York who occasionally lectures in Connecticut schools, McGee cannot be said to meet this definition. She was never "employed" by the school systems she visited from time to time to lecture.

McGee has thus not committed a tort in the state. Thus, the court cannot exercise personal jurisdiction over McGee in her individual capacity.

B.    Motion to Dismiss for Failure to State a Claim

The only remaining defendant is McGee in her capacity as representative of the Estate of Flanagan. McGee in this capacity asserts that the claims should be

dismissed because Dignan has not stated a claim upon which relief can be granted.

In his Complaint, Dignan brings his claims of sexual abuse against Flanagan's Estate pursuant to Conn. Gen Stat. § 52-577d, which states, "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse, sexual exploitation or sexual assault may be brought by such person later than thirty years from the date such person attains the age of majority." In her Motion to Dismiss, McGee asserts an affirmative defense that the statute of limitations on Dignan's claims against the Estate has run pursuant to Conn. Gen. Stat. § 45a-375. Section 45a-375(c) provides, in relevant part:

> No claim may be presented and no suit on such claim may be commenced against the fiduciary, the estate of the decedent, or any creditor or beneficiary of such estate but within (1) two years from the date of the decedent's death or (2) the date upon which the statute of limitations applicable to such claim . . . would otherwise have expired, whichever shall first occur.

McGee argues that § 45a-375 controls and Dignan only had two years after Flanagan's death to bring this claim against the Estate.

It is undisputed that the two years has long passed. The question of the relationship between these two statutes has not been addressed by the Connecticut Supreme Court. A trial court decision, in Doe v. Shimkus, held that § 45a-375 does in fact trump § 52-577. 2004 Conn. Super. LEXIS 750, *7. The reasoning in Shimkus was two-fold. First, the court found that the purpose of § 45a-375 is to protect the beneficiaries of estates from being held liable for things they did not do. Id. at 4. It also promotes public policy in favor of the speedy administration of estates. Id. Second, there is no indication that the legislature intended the limitations period of § 52-577 to

override § 45a-375.   Specifically, § 52-577 was enacted in recognition of the fact that it

may take victims of sexual abuse an extended period of time to not only recall the

abuse but gain the courage to bring the action.  Id. at 4-5. (citing Todd M. v. Richard L.,

44 Conn. Sup. 527, 534 (1995)).  The legislative scheme surrounding the enactment of

§ 52-577 indicates that its goal was to provide victims with an opportunity to speak up

and be heard as well as to prevent future acts of abuse on new victims by allowing

more time to prosecute the offenders.  Id. (citing Conn. Joint Standing Committee

Hearings).   The court in Shimkus noted that neither of these goals "would be promoted

by allowing the plaintiff to seek redress against the decedent's beneficiaries who are not

at fault for the decedent's alleged allegations."  Id. at 7.

     The Shimkus court also noted that when the legislature considered the statutory

limitations period of §52-577e, which creates an unlimited statute of limitations against

criminally convicted sexual abusers, it considered the fact that if the perpetrator died by

the time the victim came forward, then it could file a claim against their estate.  Id. at 6.

However, the legislature did not discuss whether a victim in that situation could bring

suit after the statutory limitations period in § 45a-375 had run.  Id.  The court surmised

that, given the legislative history, had the legislature intended for the statutory

limitations period to override § 45a-375 in the case of a convicted abuser, it would have

said so.  Therefore, if it did not intend for the unlimited limitations period of § 52-577e to

trump § 45a-375, then it is unlikely that it would have intended to "in the case of a

decedent who, as here, apparently has not be convicted of a prior offense. Id. at 7.

The court agrees with the reasoning in Shimkus.

     Dignan brings claims against Flanagan's Estate and consequently the court

would be inclined to hold for the defendants because the two year statute of limitations

period in § 45a-375 has run. However, Dignan asserts that the alleged fraudulent

concealment tolls the statute of limitations pursuant to § 52-595, and thus he has a

claim against Flanagan's Estate because McGee fraudulently concealed from him the

existence of the sexual abuse.  In order to prove fraudulent concealment under § 52-

595, a plaintiff is required to show:

> (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiff's cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiff's part in filing a complaint on their cause of action.

Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F. Supp. 110, 115 (D.

Conn. 1997)(citing Bartone v. Robert L. Day, Inc., 232 Conn. 527, 533, 656 A.2d 221

(1995)).  Dignan claims that he sent numerous letters to McGee regarding the sexual

abuse in an effort to determine what she knew as well as what exactly happened to him

as a child.  He asserts that she never responded to these letters and thus concealed

what she may have known about the abuse.  Further, he says that her lack of response

prevented him from filing this action sooner.

It bears noting that McGee, in her official capacity, essentially moves to dismiss

on what is a special defense of statute of limitations.  Normally, a motion to dismiss is

not a proper avenue by which to raise a special defense, although if the time-barred

aspect of the claim is clear on the face of the complaint, it may be.  McKenna v. Wright,

386 F.3d 432, 436 (2d Cir. 2004).  Here, however, the allegations concerning tolling

raise issues of fact, making the granting of a motion to dismiss inappropriate.  While it

might appear that Dignan is out of time to raise his claim against Flanagan's Estate, the

court finds that, on the face of the Complaint, there are allegations to support the claim that McGee, in her role as representative of Flanagan's Estate, may have concealed relevant information with respect to the abuse.  Thus, the court  DENIES the Motion to Dismiss with respect to the Estate, without prejudice to raising the same grounds in a Motion for Summary Judgment.

## IV. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss (Doc. No. 19) is DENIED with respect to Ellen McGee as representative of Flanagan's Estate, without prejudice to raise again in a Motion for Summary Judgment and GRANTED with respect to defendant corporations and to Ellen McGee in her personal capacity. Additionally, Dignan's Motion for Permission to File a Sur-Reply (Doc. No. 274) is also GRANTED.


**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of August, 2008.


                            /s/ Janet C. Hall
                            Janet C. Hall
                            United States District Judge