UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN DIGNAN, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 07-cv-1307(JCH) |
| v. | : | |
| | : | |
| ELLEN MCGEE, ET AL., | : | APRIL 9, 2009 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS THE ELEVENTH COUNT OF PLAINTIFF'S AMENDED COMPLAINT (DOC. NO. 38), DEFENDANT MCGEE'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 36), DEFENDANT MCGEE'S MOTION TO STRIKE (DOC. NO. 40), DEFENDANT MCGEE'S LEAVE TO FILE (DOC. NO. 50), AND DEFENDANTS' MOTION TO STAY (DOC. NO. 52).**

**I.      INTRODUCTION**

The plaintiff, Brian Dignan, brings this action against defendant Ellen McGee, both in her capacity as an individual and in her capacity as personal representative of the Estate of Daniel Flanagan (the "Estate"), for personal injuries Dignan sustained as a minor as a result of alleged sexual abuse by Daniel Flanagan. Dignan makes the same claims against Newridge Realty Corp., 1498 Third Reality Corp., and 696 Third Restaurant Corp (collectively, "defendant corporations").

**II.     FACTUAL BACKGROUND[1]**

Daniel Flanagan was the godfather to Dignan and died on March 22, 1991. McGee, Flanagan's daughter, was Dignan's godmother. Flanagan was the President of the defendant corporations. Dignan's own father died when Dignan was ten years old. After his father's death, Dignan claims that Flanagan began to sexually abuse him and the sexual abuse lasted for many years. It is undisputed that McGee was not in the

---

[1] For the purposes of the instant Motion for Summary Judgment, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support his allegations.

room when the abuse occurred.

Dignan sent McGee five letters between February 7, 2001 and October 7, 2003 discussing the abuse and how it has affected him. Though McGee received these letters she did not answer any of them. On October 10, 2002, a lawyer representing Dignan wrote to McGee stating that Dignan had claims in excess of $10,000,000 dollars against her and the Estate but that he would accept an immediate settlement of $2,000,000. This letter was answered by an attorney representing McGee who stated he was prepared to meet with the lawyer though he would prefer if Dignan did not attend. A similar letter from the same lawyer was sent on November 5, 2002.

Dignan originally filed this action in state court on July 30, 2007. It was later removed to this court on the basis of diversity jurisdiction.

## III.   PROCEDURAL HISTORY

On August 18, 2008, this court granted defendants' Motion to Dismiss with respect to all claims made against the defendant corporations and Ellen McGee in her individual capacity on the grounds that the court lacked personal jurisdiction over them. See Doc. No. 26. The only claims that remained were the claims against McGee in her capacity as personal representative of the Estate.

On August 21, 2008, Dignan filed an Amended Complaint that asserted additional allegations against the defendant corporations and McGee in her individual capacity. It also asserted a new claim, Count Eleven, against all the defendants for negligent supervision. The defendants have moved to dismiss Count Eleven asserting, inter alia, failure to state a claim under Fed. R. Civ. P. 12(b)(6).

On September 25, 2008, McGee, in her capacity as the personal representative of the Estate, moved for summary judgment on all claims against the Estate on the grounds that the claims are time-barred. See Doc. No. 36. Dignan opposes summary judgment.

For the following reasons, the court grants the Motion to Dismiss and the Motion for Summary Judgment.

## IV.     STANDARD OF REVIEW

### A.     Motion for Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

When assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question

must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000). As with a Motion to Dismiss, see infra Part IIB, because Dignan is pro se, the court must construe his "pleadings broadly, and interpret them to raise the strongest arguments that they suggest." Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000).[2]

B.   Motion to Dismiss

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint. A Rule 12(b)(6) motion to dismiss cannot be

---

[2]Defendants urge this court to not extend Dignan "the solicitude provided to pro se litigants" because of Dignan's repeat filings. See Doc. No. 58. Defendants cite Sledge v. Kooi, 556 F.3d 137 (2d Cir. 2009), for support. In Sledge the Court noted that,

> "[a]bsent a strong showing that a pro se litigant has acquired adequate experience more generally, so as to render special solicitude unnecessary and potentially inappropriate, a court should limit the withdrawal of special status to specific contexts in which the litigant's experience indicates that he may be fairly deemed knowledgeable and experienced.

Id. at 141. Defendants argue that, as a result of Dignan's many filings and the evidence in the record that he has practiced law in the State of New York, the court should withdraw this special status. While the court does not think this request is unreasonable, it declines to withdraw the "special solicitude" in this case because this court's reading of plaintiff's papers indicate that he is not "knowledgeable and experienced."

granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). In deciding a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. (internal quotations omitted). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-5 (2007).

> Dignan has filed his appearance, pro se; thus, the court further notes: Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, we must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel . . . . In order to justify dismissal of the plaintiff['s] pro se complaint, it must be beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Lerman v. Bd. of Elections, 232 F.3d 135, 139-140 (2d Cir. 2000) (citations, footnote, and internal quotation marks omitted); see also Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008)( recognizing that courts should liberally construe *pro se* submissions). In evaluating the plaintiff's complaint, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor." Cruz, 202 F.3d at 596 (citations omitted). The court must construe "pro se pleadings broadly, and interpret them to raise the strongest arguments that they suggest." Id. at 597. However, "bald assertions and conclusions of law will not suffice to state a claim . . . ." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), abrogated

on other grounds, Swierkiewicz v. Solema N.A., 534 U.S. 506 (2002) (internal citations omitted).

## V.  DISCUSSION

### A.  Motion For Summary Judgment[3]

Pursuant to this court's Ruling on the Motion to Dismiss (Doc. No. 26), the only remaining defendant is McGee in her capacity as representative of the Estate. As stated by the court in that Ruling, in light of its reading of Doe v. Shimkus, 2004 Conn. Super. LEXIS 750, the court would have been inclined to dismiss the claims against the Estate because the two year statute of limitations period in section 45a-375 has run.[4] Indeed, section 45a-375 states:

> With respect to any claim arising after the death of a decedent, no claim may be presented and no suit on such claim may be commenced against the fiduciary, the estate of the decedent, or any creditor or beneficiary of the estate but within (1) two years from the date the claim arose or (2) the date upon which the statute of limitations applicable to such claim, including any period of limitation established pursuant to section 45a-357, would otherwise have expired, whichever shall first occur.

Conn. Gen. Stat. 45a-357(d). However, the court determined that on the face of the Complaint there were allegations to support the claim that McGee, in her role as

---

[3] The court addresses the Motion for Summary Judgment first because the disposition of the Motion may obviate the need to address certain issues raised in the Motion to Dismiss.

[4] In its Ruling on the Motion to Dismiss, the court agreed with the reasoning of the Shimkus court and held that section 45a-375 trumps section 52-577d, which allows a minor victim of sexual abuse to bring a cause of action for personal injury no later than thirty years after the person attains the age of majority. The court found that section 52-577 did not apply to Dignan's case. The court reasoned that, because Dignan's claims were against the Estate of Flanagan because Flanagan was deceased, the statute governing causes of action against the Estate trumped section 52-577. In so finding, the court relied on, and agreed with, the reasoning in Shimkus. See also Skerritt v. Macarelli, 2008 Conn. Super. LEXIS 1864*15-16 (finding that section 45a-375 is not in contrast with section 53-577 because is states "whichever shall first occur" which the court reasoned "cuts short a longer competing statute of limitations"). The court notes that it finds the reasoning in both of these decisions sound and continues to hold that section 45a-375 applies in this case.

representative of the Estate, may have concealed relevant information with respect to the abuse. Such fraudulent concealment could potentially toll the statute of frauds pursuant to section 52-595 of the Connecticut General Statutes. Now the Estate asserts that the court should grant its Motion for Summary Judgment because Dignan's claims against the Estate are barred by the statute of limitations and there is no evidence that McGee fraudulently concealed the alleged sexual abuse.

The Estate first asserts that Dignan's claims are time-barred and section 52-595 is inapplicable because Dignan was in fact aware of his cause of action years before filing this suit. Section 52-595 of the Connecticut General Statutes governs the fraudulent concealment of a cause of action and states:

> "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.'

Conn. Gen. Stat. §52-595. According to the Estate, fraudulent concealment is premised on the idea that someone concealed the cause of action, thereby making it impossible for the potential plaintiff to know of its existence and therefore is prevented from bringing the cause of action in a timely manner. See Martinelli v. Bridgeport Roman Catholic Diocesan Corp, 196 F.3d 409, 427 (2d Cir. 1999) ("Martinelli II") ("plaintiff must be ignorant of the facts that the defendant has sought to conceal for the statute of limitations to toll under § 52-595").

The Estate asserts that Dignan knew of the alleged sexual abuse, and the facts underlying his claims against the Estate, as early as April 2001. Def's Mem. in Supp. Exh A. For support, the Estate points to four letters McGee received from Dignan

beginning in April 2001 that suggest that Dignan was aware of the alleged sexual abuse by Flanagan. Id. at Exh. A-D. In fact, Dignan himself included in his filings a letter he sent to McGee at an earlier date, February 7, 2001, which explicitly states that he was sexually abused by Flanagan. Mem. in. Opp. Exh. E at 7 ("I was sexually abused by Dan Flanagan. Your father sexually abused me for a period of years all the while I was living in the house and sleeping in the bed next to him."). This letter alone established Dignan's knowledge of abuse because the language is unequivocal.[5] Cf. Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F. Supp. 110, 115 (D. Conn. 1997) (finding that an ambiguous statement ("things like this might be happening to us") made by plaintiff alleging fraudulent concealment did not constitute sufficient evidence of knowledge of alleged abuse to sustain a motion for summary judgment), aff'd in part, 196 F.3d 409 (2d Cir. 1999) ("Martinelli I"). Unlike in Martinelli I, Dignan's acknowledgment of the abuse is unambiguous. Moreover, Dignan acknowledges the abuse in more than one letter to McGee. See, e.g., Mem. in Supp. Exh. A (letter dated April 10, 2007 stating, "[a]s it stands, there seems to be no other option but to sue your corporations for what he did, sexual abuse, battery and intentional infliction of emotional distress); Id. Exh. D. (letter dated October 7, 2003 stating "[t]he abuse started there when I was only fifteen and got progressively worse over the years . . . .").[6]

---

[5] Plaintiff asserts that he did not bring the suit sooner because he "vacillated interiorly as to what really happened", see Mem. in Supp. at 36, but given the absolute language used in these letters, no rational finder of fact could find that Dignan did not have knowledge of the abuse.

[6] These letters also reference Dignan's accusations that McGee tore up a check signed by Flanagan that was made out to Dignan. However, all causes of action against McGee in her individual capacity were dismissed by the court because it lacked personal jurisdiction over McGee. See Ruling (Doc. No. 26).

Not only was Dignan aware of the abuse, but he was clearly aware of his ability to bring a lawsuit against the defendant corporations and the Estate. In one letter to McGee dated April 10, 2001, Dignan wrote, "[a]s it stands, there seems to be no other option but to sue your corporations for what he did, sexual abuse, battery and intentional infliction of emotional distress." Id. Exh. B. In fact, in October 2002, there is evidence that Dignan hired a lawyer to assist him in getting McGee to enter into a monetary settlement. Id. Exh. C. (letter from an attorney representing Dignan and his wife stating "[m]y clients have informed me that, even though they have claims in excess of $10,000,000, in an effort to settle this matter quickly and completely, they are willing to accept a lump sum . . . .")[7]. In light of these letters, there can be no genuine dispute that Dignan not only knew of the sexual abuse, but he also knew of his ability to bring a lawsuit against the defendant corporations, McGee, and the Estate.

This action was first filed in state court on July 30, 2007, and later removed to this court. See Doc. No. 1. Even if the court construed the last letter written by Dignan, dated October 7, 2003, as evidence of the first time he became aware of the abuse, his cause of action is still time-barred because he filed this lawsuit well after October 2005. Accordingly, because Dignan was not "ignorant of the facts" that he claims McGee fraudulently concealed from him, the statute of limitations does not toll. Martinelli II, 196 F.3d at 427. The court grants the Estate's Motion for Summary Judgment.

---

[7] It bears noting that this particular letter does not reference the abuse explicitly but does reference the other letters (i.e., Mem. in Supp. Exh. A, C, & D) that Dignan wrote to McGee, which letters do allege sexual abuse by Flanagan.

B.    Motion to Dismiss

Defendants move to dismiss the Eleventh Count of the Amended Complaint (Doc. No. 38) which alleges that the defendants engaged in negligent supervision. Defendants assert three arguments to support their Motion to Dismiss. First, that the court has already dismissed all claims against the defendant corporations and McGee in her individual capacity. Second, they argue that the Eleventh Count is time-barred. Third, the defendants argue that the Eleventh Count should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

Defendants argue that all claims have been dismissed against McGee and the defendant corporations for lack of personal jurisdiction, and thus no more claims can be brought against them in this court. Indeed, on August 18, 2008, this court ruled that the defendant corporations and McGee in her individual capacity are not subject to personal jurisdiction in Connecticut. See Doc. No. 26 at 10. Now plaintiff seeks to bring a claim of negligent supervision against these defendants, but sets forth no additional argument as to why a claim of negligent supervision would change the court's analysis with respect to personal jurisdiction.[8]

In its previous Ruling, the court found that the theory of respondeat superior

---

[8] In this court's ruling on the Motion to Dismiss, it granted plaintiff leave to file a sur-reply. See Doc. No. 26 at 15. The court did this with the understanding that plaintiff's Motion for Permission to File a Sur-Reply was in fact, his sur-reply. See Doc. No. 24. As a result, it considered that Motion, as well as the exhibits plaintiff provided in that Motion, in making its decision. However, on October 27, 2008, plaintiff filed a Sur-Reply (Doc. No. 46). It appears that plaintiff believes that the Ruling on the Motion to to Dismiss (Doc. No. 26) was not a final ruling. See Mem. in Opp to Mot. to Dismiss Count Eleven (Doc. No. 43) at 2. The Ruling issued by this court on August 18, 2008 was a final ruling.

It bears noting that the court reviewed the second Sur-Reply (Doc. No. 46), and it does not set forth further law or facts that would persuade this court that its original Ruling was in error. Much of Dignan's arguments center around the case of Doe v. Shimkus, 2004 Conn. Super. LEXIS 750, which the court addressed in its Ruling and found persuasive. Doc. No. 26 at 12-13.

advanced by Dignan failed as a matter of law, see Doc. No. 26 at 9, because there was no evidence on the face of the Complaint that Flanagan was acting within the scope of his employment when he committed the alleged sexual abuse. It further found that Dignan did not establish personal jurisdiction over the defendant corporations pursuant to Connecticut General Statutes section 33-929(e) because there was no "articulable nexus" between the sexual abuse claims and the defendant corporations' alleged business in Connecticut. Id. at 9-10 (citing Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)).

Dignan now asserts a claim of negligent supervision, which is a recognized tort in Connecticut.[9] Seguro v. Cummiskey, 82 Conn. App. 186, 191 (2004) (stating "[u]nder Connecticut law, an employer may be held liable for the negligent supervision of employees."). However, in a negligent supervision action, "plaintiff must plead and prove that [he] suffered an injury due to the defendant's failure to supervise an employee whom the defendant had duty to supervise." Roberts v. Circuit-Wise, Inc., 142 F. Supp. 2d 211, 214 (D. Conn. 2001). Moreover, a "defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." Id. The court previously found, when addressing the issue of respondeat superior, that the there were no allegations in the Complaint to support the fact that Flanagan was acting in the scope of his employment.

---

[9] Because the defendant corporations are located in New York and Dignan asserts some of the abuse in New York, defendants argue that New York law should apply. However, in construing Dignan's Complaint broadly, some of the alleged abuse occurred in Connecticut.

Similarly, there is no evidence on the face of the Amended Complaint that the defendant corporations knew or should have known of Flanagan's "propensity to engage" in sexual abuse. Indeed, Flanagan himself was an officer and would have known of the alleged abuse, but the tort of negligent supervision cannot rest on failure to supervise himself.[10] There is nothing on the face of the Complaint that suggests that other corporate officers at the time this alleged abuse was occurring should have known that Flanagan was engaged in this conduct.[11] Therefore, it cannot be said, on the face of the Amended Complaint, that defendant corporations committed a tort in Connecticut pursuant to section 33-929(f)(4) of the Connecticut General Statutes. Accordingly, the court dismisses Count Eleven of the Amended Complaint as to the defendant corporations.

With respect to McGee in her individual capacity, the court ruled that it could not exercise personal jurisdiction over her because she did not commit a tort in Connecticut, a requirement under section of § 52-59b(a), Connecticut's long arm statute. With respect to Count Eleven, nothing on the face of the Amended Complaint suggests that McGee had a duty to supervise Flanagan. The Amended Complaint alleges that McGee became owner of the corporations after Flanagan died; thus she was never his employer. Moreover, nowhere does the Amended Complaint assert that McGee had a duty to supervise Flanagan. Furthermore, Dignan asserted in his original Complaint that McGee had a duty to report the alleged abuse because she was a

---

[10] Dignan asserts that Flanagan, as a corporate officer, had "actual knowledge of the abuse."

[11] It bears noting that Dignan does not mention any other corporate officers by name. Instead, he states that "the corporations were founded by Flanagan and now owned by McGee." Compl. ¶ 1.

teacher in Connecticut. The court was not persuaded by this argument and found that McGee did not have a duty to report. There is nothing in either the Complaint or Amended Complaint that suggests that McGee had a duty to supervise Flanagan. As such, because there is no duty, it cannot be said that McGee committed a tort in Connecticut pursuant to section of § 52-59b(a). Therefore, the court cannot exercise personal jurisdiction over her. Accordingly, the court grants the Motion to Dismiss Count Eleven with respect McGee in her individual capacity.[12]

All that is remaining is one count of negligent supervision against McGee in her capacity as representative of the Estate. However, in light of the court's ruling on the Motion for Summary Judgment, supra, part V.A, all causes of action against the Estate are time barred because Dignan did not bring this action within two years after Flanagan's death pursuant to section 45a-375 of the Connecticut General Statutes which governs the statute of limitations for bringing claims against the estate of a decedent. Moreover, Dignan was unable to demonstrate that he was ignorant to the abuse; thus, the statute of limitations cannot be tolled pursuant to section 52-295. see Martinelli II, 196 F.3d at 428 ("section 52-595 places the burden of proving both the plaintiff's ignorance and the defendant's fraudulent concealment on a plaintiff who seeks to assert and benefit from a finding of the defendant's fraudulent concealment.") Accordingly, the Motion to Dismiss is granted.

---

[12] Defendants assert other grounds for dismissal, e.g., the Amended Complaint does not relate-back to the original Complaint and the Amended Complaint is time-barred. The court does not address these arguments in light of the fact that it is dismissing the Amended Complaint on other grounds.

## VI.     CONCLUSION

For the forgoing reasons, McGee's Motion for Summary Judgment is **GRANTED** (Doc. No. 36).  Additionally, defendants' Motion to Dismiss (Doc. No. 38) is **GRANTED**. Because these Rulings dismiss all remaining counts against the defendants, the Motion to Strike Certain Portions of the Amended Complaint (Doc. No. 40), Motion for Leave to File Supplemental Reply in further Support of its Motion for Summary Judgment (Doc. No. 50),[13] and Motion to Stay Discovery (Doc. No. 52), are all **DENIED AS MOOT**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 9th day of April, 2009.

  /s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[13] The court notes that Dignan filed a Notice of Supplemental Authority, see Doc. No. 62 and a Notice of Constitutional Question to the Attorney General, see Doc. No. 63, concerning whether section 45a-375 is unconstitutional.  The defendants filed a response to the Notice of Supplemental Authority, see Doc. No. 64, on April 7, 2009.  This Response addresses what the Motion for Leave was seeking to address thus making that Motion now moot.

It bears noting that the court agrees with defendants that Kerrigan v. Comm'r Pub. Health, 289 Conn. 135 (2008), which is relied on by Dignan, does not support the position that section 45a-375 is unconstitutional.